UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**WALTER PHILLIPS**,                    Case No. 1:11 CV 1630

      Petitioner,                    Judge Dan Aaron Polster

    v.                    REPORT AND RECOMMENDATION

**STATE OF OHIO**,

      Respondent.                    Magistrate Judge James R. Knepp, II

### INTRODUCTION

Petitioner Walter Phillips, a prisoner in state custody, filed a Petition seeking a writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1). Petitioner subsequently amended his Petition. (Doc. 5). Respondent, the State of Ohio, filed a Return of Writ. (Doc. 12). Petitioner filed a Traverse (Doc. 16) to which Respondent filed a Reply (Doc. 17). Petitioner then filed a Surreply (Doc. 20) and a second Traverse (Doc. 18). Respondent filed a Reply to Petitioner's Surreply, second Traverse, and Surreply. (Doc. 20). Also pending before the Court is Petitioner's Motion to Conduct Discovery (Doc. 19), to which Respondent filed an Opposition (Doc. 22). Petitioner filed a Reply to Respondent's Opposition. (Doc. 23).

The district court has jurisdiction over the Petition under 28 U.S.C. § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated September 15, 2011). For the reasons discussed below, the undersigned denies Petitioner's Motion to Conduct Discovery and recommends the Petition be denied and dismissed.

## BACKGROUND

### *Factual Background*

For purposes of habeas corpus review of state court decisions, findings of facts made by a state court are presumed to be correct and can only be contravened if the habeas petitioner can show, by clear and convincing evidence, that the state court's factual findings were erroneous. 28 U.S.C. § 2254(e)(1); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies even to factual findings made by a state court of appeals based on the state trial record. *Id.* Petitioner has not presented clear and convincing evidence in his Petition to contravene the facts recited by the Eighth District Court of Appeals:

[¶ **2**]    During the Labor Day weekend of 1985, [Petitioner's] wife, D.P., had taken his car and damaged it. She returned the car, but then left, ostensibly to avoid the repercussions from the damaged automobile. [Petitioner] awoke on Saturday, August 31, and saw the state of his car parked in the driveway. Unable to find his wife, he inquired of the three children about her whereabouts. [Petitioner] first asked his step-son ("Step-son One"), then age 13, where his mother was. After Step-son One responded that he did not know, [Petitioner] beat him with a metal mop handle. [Petitioner] then took Step-son One into the master bedroom and forced him to perform oral sex on [Petitioner]. Step-son One testified that [Petitioner] then did the same acts to him. After this ordeal ended, [Petitioner] instructed Step-son One to send his brother ("Step-son Two") into the room, and Step-son One left.

[¶ **3**]    Step-son Two testified that [Petitioner] made him and his siblings perform oral sex on [Petitioner], one by one. He also testified that [Petitioner] threatened them with a handgun. Step-son Two stated that the events occurred over two days, which was contradicted by the testimony of the other victims.

[¶ **4**]    N.P., [Petitioner's] daughter, testified that she was the last child forced into the bedroom and that once there, she was instructed to remove her clothes. At first she refused. This caused [Petitioner] to beat her with the mop handle. She was forced to suck [Petitioner's] nipples as Step-son Two performed oral sex on him. [Petitioner] also made her perform oral sex on him. N.P. also testified that [Petitioner] attempted to engaged in vaginal intercourse with her, but was unable to achieve full penetration.

[¶ **5**]    Once D.P. was reunited with her children, they relayed the events that

2

occurred, and the police were contacted. Petitioner was arrested on September 2, 1985 and indicted on five counts of rape, two counts of gross sexual imposition, and one count of felonious assault. During jury selection, [Petitioner] asked to use the bathroom, was excused, and slipped out of the courthouse. It was not until 2009, when [Petitioner] was arrested by the Kenton, Ohio police[,] that he was apprehended and tried.

*State v. Phillips*, 2011 Ohio 475, ¶¶ 2–5 (Ohio Ct. App. 2011) (footnotes omitted).

### State Court Proceedings

Petitioner's trial began on March 16, 2010. (Doc. 12-1, at 20). At the conclusion of the state's case, the trial court partially granted Petitioner's motion for acquittal, dismissing one count of rape and both counts of gross sexual imposition. (Doc. 12-1, at 21). Following a two-day jury trial, Petitioner was convicted on four counts of rape and one count of felonious assault with a firearm specification. (Doc. 12-1, at 22). The trial court then sentenced Petitioner in accordance with the sentencing laws in effect in 1985. (Doc. 12-1, at 23). Petitioner's total sentence comprised prison terms of 5–25 years for each rape count and 3–15 years for the assault count plus 3 years for the firearm specification, the counts relating to different victims running consecutively, for a total indefinite prison term of 18–75 years. (Doc. 12-1, at 23). Furthermore, Petitioner was labeled a Tier III sex offender. (Doc. 12-1, at 24).

Petitioner timely appealed. (Doc. 12-1, at 25). He raised the following four assignments of error:

Assignment of Error [#] 1: The trial court erred in denying the defense an acquittal on count #3 (Rape of [R.P.], under the age of 13) when the testimony indicated that [R.P.] was *over* 13 years of age. Put another way, proof that the victim was under the age of 13 is an essential element of the charge and the alleged victim was not under the age of 13.

Assignment of Error # 2: Walter Phillips's convictions for Rape (1, 3, 4, 5) and Felonious Assault (8) should be reversed due to insufficiency of evidence and a failure of the state to carry the manifest weight of the evidence burden.

3

> <u>Assignment of Error # 3</u>: Walter Phillips's designation as a Tier III sex offender[] is the result of an unconstitutional law and, further, said registration subjects him to cruel and unusual punishment.
>
> <u>Assignment of Error # 4</u>: The prosecutor's suggestion in closing argument that Phillips behaved in a guilty manner in court deprived him of a fair trial and amounted to prosecutorial misconduct.

(Doc. 12-1, at 46). By motion, Petitioner later withdrew his first assignment of error. (Doc. 12-1, at 77–78). On February 3, 2011, the Eighth District Court of Appeals affirmed. (Doc. 12-1, at 79–91); *State v. Phillips*, 2011-Ohio-475 (Ohio Ct. App. 2011).

On April 28, 2011, Petitioner filed a notice of appeal from the Court of Appeals' decision. (Doc. 12-1, at 93). Because Petitioner filed his notice of appeal more than 45 days after the Court of Appeals' decision, it was untimely. *See* Supreme Court of Ohio Practice Rule 2.2(A)(1)(a). Therefore, Petitioner filed a motion for leave to file a delayed appeal with the Ohio Supreme Court, stating he was not informed of the deadline to file his appeal until after it had passed. (Doc. 12-1, at 96–97). On June 8, 2011, the Ohio Supreme Court denied Petitioner's motion and dismissed his case. (Doc. 12-1, at 115).

### Federal Habeas Corpus

Petitioner filed a Petition for a writ of habeas corpus on August 4, 2011. (Doc. 1). Following an order to amend issued by the district court, Petitioner filed an Amended Petition on August 31, 2011. (Doc. 5). In the Amended Petition, Petitioner raises four grounds for relief:

> Ground One: There [was] no medical testimony regarding sexual assault was [sic] provided. The only corroboration of the accuser's rendition was [sic] records that supported a physical non sexual assault. There was no DNA dia[g]nostics test done on me. There was no rape kit test done[.] The accuser's medical scientific test[s] came back negative. One can't get a positive out of a negative.
>
> Ground Two: Statute of Limitations RC 2901.13(A). The fact is its has [sic] been over 20 years. It has been over 25 years. The state of Ohio had 25 years to get these

4

claims resolved. [A]nd also there's a violation of Mr. Phillips['] right to a speedy trial pursuant to ORC 2945.71, 72, 73, Ohio Constitution Article Section 10 and also the Six[th] and Fourteenth Amendments to the United States Federal Constitution.

Ground Three: [I]neffective assistance of counsel[.] Some of the evidence and witness[es] where [sic] not presented at the trial some of the witness[es were] not called to the witness stan[d,] witness[es] such as Emma Tarver[,] Vikki Tarver[,] witness Stanley E. Tolliver[,] Robert Feighan[, and] assistant county prosecutor William Caine[.] Some of this unpresented evidence could be favorable to me and so some of the witness [sic].

Ground Four: Ground often grounds the basis for an argument, belief, or action. I [said] that to say this about the action[s] taken against me as a Tier III sex offender is the result of an unconstitutional law further said registration subjects Mr. Phillips to cruel and unusual punishment. This is not in accordance with sentencing laws in effect in 1985 in 1985 this Tier III sex offender registration wasn't effective or exist [sic] in 1985 and don't apply to me.

(Doc. 5, at 6–11).

## MOTION TO CONDUCT DISCOVERY

Petitioner filed a letter on January 18, 2012, which the Court liberally construes as a Motion to Conduct Discovery under Habeas Rule 6(a) (Doc. 19), stating he wants a subpoena issued to the court reporter he believes is in possession of transcripts from his initial proceedings in 1985. (Doc. 19, at 3). Petitioner previously filed a letter asking the Court to order these transcripts made available (Doc. 14), which the Court denied (Doc. 15).

The Habeas Rules provide discretion in allowing discovery, stating in relevant part:

(a) Leave of Court Required. A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery. If necessary for effective discovery, the judge must appoint an attorney for a petitioner who qualified [as indigent].

(b) Requesting Discovery. A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.

Habeas Rule 6(a)–(b). Petitioner has provided reasons for his request to subpoena the court reporter,

5

but the Court does not consider his reasons good cause. The 1985 transcripts are irrelevant to the Petition. None of Petitioner's grounds touch upon the events transcribed in 1985. Instead, Petitioner disputes the soundness of his 2010 sentencing, the decisions made by his trial counsel at his 2010 trial, the evidence presented against him at his 2010 trial, and the ability of the state to prosecute him in 2010.

The only ground Petitioner argues that could have any relevance to the proceedings in 1985 is Ground Four, regarding the statute of limitations. Forgetting for a moment that this appears to be an argument based solely on state law, and therefore not cognizable in a federal habeas case, the statute Petitioner cites requires prosecution to be "commenced" within a particular time, and defines this concept:

> A prosecution is commenced on the date an indictment is returned or an information filed, or on the date a lawful arrest without a warrant is made, or on the date a warrant, summons, citation, or other process is issued, whichever occurs first. A prosecution is not commenced by the return of an indictment or the filing of an information unless reasonable diligence is exercised to issue and execute process on the same. A prosecution is not commenced upon issuance of a warrant, summons, citation, or other process, unless reasonable diligence is exercise to execute the same.

Ohio Rev. Code § 2901.13(E). Thus, the 1985 indictments are relevant to this ground (assuming the Court has jurisdiction to address its merits), which is precisely why they were included in Respondent's Return of Writ. (Doc. 12-1, at 1–10). The transcripts from Petitioner's pretrial hearings in 1985, on the other hand, would not be material to when Petitioner's prosecution commenced.

The same statute specifies that "[t]he period of limitation shall not run during any time when the accused purposely avoids prosecution. Proof that the accused departed this state or concealed the accused's identity or whereabouts is prima-facie evidence of the accused's purpose to avoid

prosecution." Ohio Rev. Code. § 2901.13(G). It is well established in this case that Petitioner fled

the area, and remained at-large, for 23 years after sneaking out of the courthouse right before his trial

started. (Doc. 12-1, at 9, 12; Doc. 16-3, at 11–12). Certainly, if for no other reason, the need for any

transcripts from proceedings in 1985 is mooted by the fact the statute of limitations could not have

run while Petitioner was on the lamb. For these reasons, there is not good cause to allow Petitioner

to subpoena the court reporter he believes to be in possession of transcripts from his 1985 court

proceedings. Petitioner's Motion is denied.

## PROCEDURAL DEFAULT & EXHAUSTION

Respondent argues Petitioner has procedurally defaulted all of his grounds for relief, some

for multiple reasons. Reasons of federalism and comity generally bar federal habeas corpus review

of "contentions of federal law . . . not resolved on the merits in the state proceeding due to [the]

failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S. 72, 87

(1977).

> When a petitioner has defaulted his federal claims in state court pursuant to an
> independent and adequate state procedural rule, federal habeas review of the claims
> is barred unless the prisoner can demonstrate cause for the default and actual
> prejudice as a result of the alleged violation of federal law, or demonstrate that
> failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Procedural default occurs when a petitioner fails

to present fairly to the highest state court his claims in a federal constitutional context. *O'Sullivan*

*v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982). A failure to present a

claim to the highest court in the state deprives a federal court hearing a habeas petition of

jurisdiction on that issue. *See McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

One way procedural default occurs is when the last state court rendering a decision makes

a "plain statement" basing its judgment on a procedural bar. *Harris v. Reed*, 489 U.S. 255, 265 (1989). That is, if, due to the petitioner's failure to comply with a procedural rule, the state court declines to reach the merits of an issue, and the state procedural rule is an adequate and independent grounds for precluding relief, then the issue is procedurally defaulted unless there was actual prejudice by the alleged constitutional error and "cause" for not following the procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). But "[t]he mere existence of a basis for a state procedural bar does not deprive [federal courts] of jurisdiction; the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case." *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985)); *see also Coleman*, 501 U.S. at 735 (holding the last state court rendering a reasoned judgment must "clearly and expressly" state its judgment rests on a procedural bar for procedural default to apply). Where a state court is silent as to the reason for denying a claim, the Sixth Circuit applies a presumption that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar." *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).

Another way procedural default occurs is if a petitioner does not exhaust his claims in the state courts while procedurally permitted to do so. A petitioner must fairly present any claims to the state courts in a constitutional context to properly exhaust state remedies. *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971). Indeed, a federal habeas court must first examine the central question of exhaustion. *See Clinkscale v. Carter*, 375 F.3d 430, 436-37 (6th Cir. 2004), *cert. denied*, 543 U.S. 1177 (2005) ("In general, we may grant a petition for a writ of habeas corpus only if 'it appears that . . . the applicant has exhausted the remedies available in the courts of the State' . . . ." (quoting 28 U.S.C. §2254(b)(1)). The exhaustion doctrine requires that the prisoner

8

"give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process." *See O'Sullivan*, 526 U.S. at 845. Once "the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." *Picard*, 404 U.S. at 275; *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994) (a claim is exhausted when a petitioner gives the state courts a full and fair opportunity to rule on his claims by fairly presenting all claims to the highest court in the state). If a petitioner fails to present a claim to the state courts and no state remedy remains available, he has procedurally defaulted that claim. *See Gray v. Netherland*, 518 U.S. 152, 161–62 (1996); *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006).

If the state argues a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction. . . . Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138.

Here, Respondent first argues that all of Petitioner's grounds have been procedurally defaulted because Petitioner failed to file a timely appeal with the Ohio Supreme Court. The Sixth Circuit has said the Ohio Supreme Court's "denial of a motion for a delayed appeal is a procedural

9

ruling, not a ruling on the merits", and therefore "sufficient to bar federal court review" in habeas proceedings. *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). And the Supreme Court has held similar rules to be adequate and independent state grounds, noting in one case that even merits briefs being filed and considered by the court, without more, "does not justify a different conclusion." *Coleman*, 501 U.S. at 578. In this case, Petitioner missed the deadline to file his appeal with the Ohio Supreme Court, and so moved for leave to file a delayed appeal – a request which was denied. (Doc. 12-1, at 96–100, 115). The first three prongs of the *Maupin* test are clearly met by these facts. *See Bonilla*, 370 F.3d at 497; *Coleman*, 501 U.S. at 578.

The fourth part of the *Maupin* test requires Petitioner to show cause why he failed to meet the Ohio Supreme Court's deadline for an appeal, and actual prejudice suffered from the constitutional violations he alleges. *See Maupin*, 785 F.2d at 138. But Petitioner cannot show cause to excuse this default. "Cause" in this context requires a showing of "some objective factor external to the defense that impeded" Petitioner's efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Here, Petitioner received timely notice from his appellate counsel that he had lost his appeal in the Court of Appeals.[1] (Doc. 1-4, at 1; 12-1, at 98). His motion to the Ohio Supreme Court indicated the reason for his delayed appeal was because he only gained knowledge of the time bar to his appeal after the deadline had already passed. (Doc. 12-1, at 100). The law is clear that a petitioner's ignorance of procedural time limits does not establish cause for a procedural default. *See Miller v. Webb*, 74 F. App'x 480, 482 (6th Cir. 2003) ("ignorance of the law is not, however, sufficient to establish cause in this context"); *Hall v. United States*, 41 F. App'x

---

1. In fact, Petitioner's appellate counsel advised him of his ability to appeal to the Ohio Supreme Court and admonished him to contact the State Public Defender "immediately" if he wished to do so. (Doc. 1-4, at 1).

743, 744 (6th Cir. 2002) ("mere ignorance of the law is not sufficient to establish cause"). Accordingly, all of Petitioner's grounds for relief have been defaulted under *Maupin*.

The question now becomes whether the Court should nonetheless exercise its equitable discretion to correct a miscarriage of justice. A procedural default will be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. This is a power derived from the court's equitable discretion. *McCleskey v. Zant*, 499 U.S. 467, 490 (1991). Despite statutory revision removing reference to an "ends of justice" inquiry by federal habeas courts, the Supreme Court has held that such an inquiry remains appropriate, but requires that a petitioner "supplement[] a constitutional claim with a 'colorable showing of factual innocence.'" *Id.* at 495 (quoting *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986)). Maintaining this exception to the rule against reviewing procedurally defaulted claims serves as "an additional safeguard against compelling an innocent man to suffer an unconstitutional loss of liberty". *Id.* (quoting *Stone v. Powell*, 428 U.S.  465, 492–493 (1976)).

Here, Petitioner does not make a colorable showing of factual innocence. Even though Petitioner argues there was evidence favorable to him not presented by his attorney, the "unpresented evidence" he attached to his Petition consists only of filings prepared by the state prosecutor, such as a notice of intent to introduce 404(B) evidence of prior rapes committed by Petitioner. (Doc. 1-10, at 10–15). Certainly, this does not even remotely suggest Petitioner's actual innocence.

In his correspondences filed with this Court, Petitioner has argued his innocence only by making a kind of manifest weight of the evidence argument and by referring to the state's evidence as "a cover up and a conspiracy by [witnesses and] Cuyahoga County" and the Cleveland Police.

(Doc. 16-3, at 16–17). This does not amount to a colorable argument that federal review of his claims is necessary to prevent a fundamental miscarriage of justice. Petitioner simply presents no evidence, new or otherwise, suggesting his actual innocence. Even assuming some sort of constitutional violation occurred, this is not a case "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496. With no equitable exception applying, Petitioner's default has utterly deprived this Court of jurisdiction to address his grounds for relief on the merits.

For the sake of completeness, the Court notes the record also shows Petitioner failed to exhaust his second and third grounds for relief. Neither ground was presented in any manner to the Court of Appeals. (Doc. 12-1, at 46). As Respondent correctly argues, this satisfies the first three prongs of the *Maupin* test because the procedural rule of waiver is an adequate and independent state ground to bar habeas claims and serves the state's interest in ensuring claims are adjudicated at the earliest possible opportunity. *See Rust*, 17 F.3d at 161. Once again, Petitioner has not demonstrated "cause" for this failure; he has not argued any external factor that prevented him from presenting these claims to the Court of Appeals. Additionally, Petitioner has made no colorable claim of factual innocence. Therefore, the Court could not address these grounds on the merits even if the Ohio Supreme Court had not denied Petitioner's motion for leave to file a delayed appeal.

## STANDARD OF REVIEW

When the basis for a federal habeas claim has been previously adjudicated by the state courts, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the writ shall not issue unless the state decision "was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." 28 U.S.C.

12

§ 2254(d)(1). A legal doctrine is not "clearly established federal law as determined by the Supreme Court" unless it is based on "holdings, as opposed to the dicta, of the Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

A federal court may grant habeas relief if the state court arrives at a decision opposite to that reached by the Supreme Court of the United States on a question of law, or if the state court decides a case differently than did the Supreme Court on a set of materially indistinguishable facts. *Id.* at 405. The appropriate measure of whether or not a state court decision unreasonably applied clearly established federal law is whether that state adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Id.* at 409–11; *see also Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000).

To obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011).

### ANALYSIS

As analyzed above, the undersigned believes this Court lacks jurisdiction to address Petitioner's grounds for relief on the merits because each ground has been procedurally defaulted. However, absent such a finding, Petitioner's grounds still lack any merit.

First Ground for Relief

Petitioner's first ground appears to be a manifest weight argument, which is definitely not cognizable in federal habeas proceedings as a federal constitutional claim. *See Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1976). But even liberally construing this to be an insufficient weight

13

argument, it still fails.

When reviewing a sufficiency of the evidence claim in habeas, federal courts must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, while viewing the evidence in a light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). If so, the petition must be denied. *Fuller v. Anderson*, 662 F.2d 420, 423 (6th Cir. 1981). But federal courts must do this within the extremely deferential standard set by AEDPA; that is, whether Petitioner is entitled to relief "ultimately depends on whether the [state court]'s denial was based on an unreasonable application of clearly established federal law regarding the sufficiency of the evidence." *Getsy v. Mitchell*, 495 F.3d 295, 315–316 (6th Cir. 2007) (en banc) (noting the federal standard to be *Jackson*). For habeas relief based on insufficient evidence, the state court's decision must have been so objectively unreasonable as to be "beyond error" or "outside the boundaries of permissible differences of opinion"; it must be very far out of line with the *Jackson* standard. *Davis v. Lafler*, 658 F.3d 525, 535–536 (6th Cir. 2011).

Here, after explaining the *Jackson* standard, the Court of Appeals recited the elements of each offense Petitioner was convicted of, and cited testimony sufficient to meet these elements:

> [Petitioner] was convicted of felonious assault[:] "(A) No person shall knowingly: . . . (2) cause or attempt to cause physical harm to another by means of a deadly weapon or dangerous ordnance . . . ." This charge applied solely to N.P. and alleged that [Petitioner] attempted to cause physical harm with a deadly weapon. Step-son Two testified that [Petitioner] held a gun to all their heads and told them to perform sex acts on him or he would kill them. [T]he act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to convict a defendant of [felonious assault.] His testimony is sufficient to sustain [Petitioner's] conviction for felonious assault.

> [Petitioner] was also convicted of rape[:] "(A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply: (1) The offender purposely compels the other person to submit by force or threat of force. . . . (3) The other person is less than thirteen years of age, whether or

14

not the offender knows the age of such person." The testimony of Step-son One, Step-son Two, and N.P. offers sufficient evidence to satisfy the elements of rape in violation of these two subsections. Step-son Two and N.P. testified that they were 11 and 10 years old, respectively, when these crimes occurred, satisfying one of the requirements of [subsection] (A)(3). All three testified that they were forced to engage in sexual conduct. Step-son One and N.P. testified they were beaten with a mop handle and sustained physical injuries. Step-son Two and Step-son One both testified that [Petitioner] threatened them with a gun. The children's medical records also documented their injuries and bolstered their testimony. This evidence, viewed in a light most favorable to the state, is sufficient to sustain the rape and assault convictions.

*Phillips*, 2011 Ohio 475, at ¶¶ 15–25 (citations omitted).

As the state court correctly concluded, any rational trier of fact could have found the elements of each offense proven beyond a reasonable doubt given the testimony and other evidence presented at trial. The Court of Appeals thus reasonably applied the *Jackson* standard. There was sufficient evidence for each of Petitioner's convictions, and there was therefore no decision in this case contrary to, or involving an unreasonable application of, clearly established federal sufficiency of evidence law. Petitioner's first ground, even if not defaulted, lacks merit.

Second Ground for Relief

Petitioner's second ground, at least with respect to the statute of limitations, is based entirely on state law, and therefore not cognizable in federal habeas. But liberally construing it to be a federal due process argument, it still fails. Petitioner has not cited, and this Court cannot find, any Supreme Court case suggesting Due Process is violated when a criminal defendant is indicted, goes on the run for two decades to avoid prosecution, and is then prosecuted once caught. In fact, not only is there no clearly established federal law supporting Petitioner's second ground, but even analysis under state law shows this argument to be futile. As this Court noted above when discussing the Motion to Conduct Discovery, Petitioner's statute of limitations argument is entirely fruitless under

state law because the relevant statute of limitations was tolled during the 23 year period when Petitioner's whereabouts were unknown. Ohio Rev. Code. § 2901.13(G). So not only was there no Due Process violation; there was no statute of limitations violation.

Petitioner also argues his speedy trial rights were violated. But the record shows indisputably that Petitioner unambiguously waived his speedy trial rights in open court (multiple times) and in writing. (Doc.12-1, at 11, 21; Doc. 13, at 5–8, 14–17). Petitioner is not entitled to relief on this ground.

Third Ground for Relief

For Petitioner's third ground, he makes an ineffective assistance of counsel argument. To prevail on an ineffective assistance of counsel claim, Petitioner must satisfy both prongs of the *Strickland* test: performance and prejudice. *Harries v. Bell*, 417 F.3d 631, 636 (6th Cir. 2005) (citing *Strickland v. Washington*, 466 U.S. 668, 686-692 (1984)). To meet the performance prong, counsel's representation must fall below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688. To meet the prejudice prong, there must be a reasonable probability that, absent counsel's unprofessional errors, the results of the proceeding would have been different. *Id.* at 694. When considering the prejudice element, the focus is on whether counsel's errors undermined the reliability of, and confidence in, the result. *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 370 (1993)). This is a high burden:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the

> evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689.

In this case, Petitioner's ineffective assistance arguments centers on his trial counsel's not calling certain witnesses. (Doc. 5, at 9). But Petitioner does not assert what these witnesses would have said or how they could have possibly changed the outcome. Given the amount and consistency of testimony by the three victims in this case, no court could say there is a fair probability a different outcome would have resulted if these witnesses had been called – most especially without knowing what their testimony would have established. Petitioner cannot show ineffective assistance of counsel.

Fourth Ground for Relief

Petitioner's fourth ground relates to his adjudicated status as a Tier III sex offender. Petitioner argues this is unconstitutional as cruel and unusual punishment. (Doc. 5, at 10–11). The Court of Appeals upheld the retroactive application of Ohio's sex offender statutes to Petitioner. *Phillips*, 2011 Ohio 475, at ¶ 27. The court cited to Ohio cases that interpreted the statutory scheme to be remedial and not punitive in nature. *See, e.g., Gildersleeve v. State*, 2009 Ohio 2031, ¶ 19 (Ohio Ct. App. 2009).

The Supreme Court has defined the outer contours of the Constitution's prohibition against ex post facto laws, Article I, Section 9, Clause 3:

> It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was

17

committed, is prohibited as ex post facto.

*Beazell v. Ohio*, 269 U.S. 167, 169–170 (1925). However, the Supreme Court has narrowed this definition substantially:

> It is equally well settled, however, that "[t]he inhibition upon the passage of ex post facto laws does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed." "[T]he constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation[,] and not limit the legislative control of remedies and modes of procedure which do not affect matters of substance."

*Dobbert v. Florida*, 432 U.S. 282, 293 (1977) (quoting *Gibson v. Mississippi*, 162 U.S. 565, 590 (1896); *Beazell*, 269 U.S. at 171). A procedural change is not ex post facto, even if it works to the disadvantage of a defendant. *Id.*

In recent years, the Supreme Court has routinely declined the opportunity to address whether sex offender registration laws violate the Ex Post Facto Clause. *See United States v. Juvenile Male*, 131 S.Ct. 2860, 2862 (2011) (vacating a Court of Appeals judgment that the Sex Offender Registration and Notification Act violated the Ex Post Facto Clause for lack of Article III standing); *Carr v. U.S.*, 130 S.Ct. 2229, 2232 (2010) (refusing to address whether sex offender registration laws violated the Ex Post Facto Clause after finding the statute did not apply retroactively). However, in 2003 the Supreme Court issued a decision in *Smith v. Doe*, 538 U.S. 84 (2003), that plainly refutes Petitioner's argument.

In *Smith*, the Supreme Court analyzed Alaska's Sex Offender Registration Act and ultimately determined its effect was non-punitive. *Id.* at 105. The statute in question required individuals convicted of certain sexual based offenses to register with local authorities and subsequently notify them of various changes, such as to their facial appearance or address, and applied retroactively. *Id.* at 90. Failure to comply with these requirements subjected offenders to criminal prosecution. *Id.* The

18

Court reasoned:

> A sex offender who fails to comply with the reporting requirement may be subjected to a criminal prosecution for that failure, but any prosecution is a proceeding separate from the individual's original offense. . . . The Ex Post Facto Clause does not preclude a State from making reasonable categorical judgments that conviction of specified crimes should entail particular regulatory consequences. We have upheld against ex post facto challenges laws imposing regulatory burdens on individuals convicted of crimes without any corresponding risk assessment. . . . The State's determination to legislate with respect to convicted sex offenders as a class, rather than require individual determination of their dangerousness, does not make the statute a punishment under the Ex Post Facto Clause.

*Id.* at 101–104 (citations omitted). The Court noted that the Act imposed the "minor condition of registration", and said this was "not so excessive a regulatory requirement as to become a punishment." *Id.* at 105. The Court emphasized that sex offender registration is not similar to probation or supervised release because offenders are free to live and work as other citizens, with no supervision. *Id.* at 101.

The sex offender registration requirements at issue here are similar to those in *Smith*; Ohio requires Tier III sex offenders to register with the county sheriff under certain circumstances. Ohio Rev. Code §§ 2950.04, 2950.041. Violators of the reporting requirements are subject to criminal prosecution. Ohio Rev. Code § 2950.99. The federal law established by the Supreme Court most analogous to this situation – *Smith* – indicates this is a non-punitive regulatory burden, and thus constitutionally applied retroactively. In sum, labeling Petitioner a Tier III sex offender was not contrary to, or involving an unreasonable application of, clearly establish federal law as determined by the Supreme Court.

### CONCLUSION AND RECOMMENDATION

Following review of the record, arguments presented, and applicable law, it is apparent Petitioner has procedurally defaulted each of his grounds for relief. But even if Petitioner had not

19

defaulted these grounds, or an exception to the procedural default rule applied, Petitioner's grounds would nonetheless lack merit. Therefore, the undersigned recommends the Petition be denied and dismissed.

s/James R. Knepp, II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

20